# EXHIBIT B

**Ballard Spahr**
LLP

# Princeton Alternative Fund

# Top To Bottom, A Fraud

David J. Margules
Timothy D. Katsiff

Confidential Treatment Requested FOIA Exempt

# Key Players

- <u>Princeton Alternative Income Fund, L.P.</u>
  - Delaware L.P. providing credit lines to vetted subprime lenders
  - Managed by Princeton Alternative Funding LLC ("PAF")
- <u>MicroBilt Corporation</u>
  - Subprime credit rating agency
  - Owns 52.6% of PAF
- <u>Philip Burgess</u>
  - Controlling Stockholder of MicroBilt and other companies including Bristol and Westminster
  - Convicted of Tax Evasion in 2008
- <u>Ranger Capital</u>
  - Over $2 Billion AUM
  - Invested $61.9 Million in Princeton; Approximately 84% of Fund's Total Capital

**Ballard Spahr**
LLP

2

Confidential Treatment Requested FOIA Exempt

## Issues to be Discussed

- Concealed Identity and Background of Controllers

- Violations of Representations Regarding Investment Risk

- Undisclosed Conflicts of Interest and Diversions

- Refusal to Redeem 13 Months After Payout Deadline

- Apparent Inflated Asset Valuations

**Ballard Spahr**
LLP

3

Confidential Treatment Requested FOIA Exempt



# Concealed Identity and Background of Controllers

**Ballard Spahr**
LLP

4

Confidential Treatment Requested FOIA Exempt

MDJ(2

## Identity and Background of Controllers

**The General Partner**

Princeton Alternative Funding LLC, a Delaware limited liability company, is the general partner of the Fund (the "General Partner"). The General Partner is responsible for the business and affairs of the Fund and the management of the Fund's portfolio.

**Bob Farrell.** Mr. Farrell is the President and Co-founder of the General Partner. Mr. Farrell was also a Co-founder of Cornell Capital Partners, providing alternative funding to emerging growth companies. Prior to selling his interest in 2003, he was credited with helping to pioneer Standby Equity Distribution Agreements. Mr. Farrell was responsible for managing the Corporate Finance Division of the May Davis Group, Inc., focused on alternative funding strategies for publicly traded companies. His experience extends over nineteen years in the financial service industry with Lehman Brothers, Oppenheimer, and others. Mr. Farrell has a Bachelor of Science in Business Administration from the University of New Hampshire.

**Alonzo Primus.** Mr. Primus is a Managing Partner of the General Partner and a Certified Public Accountant. With over twenty years of experience in financial services, Mr. Primus has worked closely with a number of large private and publicly traded financial services providers to deliver products and services to the under banked and unbanked markets, including clients such as Compucredit Corp., Think Finance, Inc., CNG Financial Inc., Ace Cash Express, Check-Into Cash Inc. and many others. In addition to his experience with loan underwriting policy and procedures, he has extensive experience with risk analytics as well as reporting and monitoring tools for the management of all phases of alternative lending. Mr. Primus has a Master's Degree in Business Administration from Temple University, as well as a Bachelor of Science in Accounting and Finance from Drexel University.

**Bert Szostak.** Mr. Szostak is a Managing Partner and Co-founder of the General Partner. Bert has more than 25 years' experience in the finance industry marketing alternative and traditional investments at global Interdealer brokers such as GFI Group, Icap, and Tullet Prebon. He is credited with the launching the Private Shares Market Group of GFI Group and was a founding member of the Alternative Markets Group at ICAP LLC. During his time with GFI, Bert also started and

managed the organizations International Equity desk in New York and launched its London affiliate. He holds a BS in Management and Finance from Susquehanna University in Selinsgrove, PA.

Princeton PPMs, and other marketing materials list Bob Farrell, Alonzo Primus and Bert Szostak as comprising the Fund's management.  Primus and Szostak are Managing Partners.

None has any affiliation with MicroBilt and MicroBilt is not listed as a Managing Partner.  Philip Burgess is not identified as having any role.

## Ballard Spahr
LLP

5

Confidential Treatment Requested FOIA Exempt

Slide 5

MDJ{2    This is not the full text.   The Szostak bio bleeds into the next page.   Put the rest of the text in a second column

Then add the following text in a box, under the second column:   "Princeton PPM represents that Messrs. Farrell, Primus and Szostak -- each of whom is fully independent of MicroBilt -- will manage the Fund.   MicroBilt is not identified as a Managing Partner."
Margules, David J. (Wilm), 12/11/2017

Confidential Treatment Requested FOIA Exempt

## Identity and Background of Controllers

- Philip Burgess Controls The Fund

  - Burgess Family Owns Majority of MicroBilt (Argon Tr. 8-9)

  - Fund was Burgess' Idea (Wojciechowski Dep. 53, 58)

  - MicroBilt "Delegated" to Burgess Full Authority to Deal With Fund (*Id.* 62)

  - Burgess Reviewed and Approved Conflict of Interest Disclosures in PPM (Nov. 6, 2014 email; CX 18)

**Ballard Spahr** LLP

6

Confidential Treatment Requested FOIA Exempt

# Burgess Indictment and Guilty Plea

## NEWS

United States Department of Justice
U.S. Attorney, District of New Jersey
970 Broad Street, Seventh Floor
Newark, New Jersey 07102

*Christopher J. Christie, U.S. Attorney*

More information? Call the Assistant U.S. Attorney or other contact listed below to see if more information is available.

News on the Internet: News Releases and related documents are posted at our website.
Go to: http://www.usdoj.gov/usao/nj/press/index.html

Assistant U.S. Attorney:                                  burg1031.rel
SETH KOSTO                         FOR IMMEDIATE RELEASE
973-645-2737                              Oct. 31, 2007

Princeton Businessman Arrested and Charged with
Purposefully Failing to Pay Millions in Payroll Taxes

(More)

Public Affairs Office                                973-645-2888
Michael Drewniak, PAO

http://www.usdoj.gov/usao/nj/press/index.html



- Plead guilty to two counts of tax fraud and did time

- Directed companies (including MicroBilt) to withhold more than $2 million in taxes from paychecks and failed to pay to the IRS

- Failed to pay another $900,000 in corporate payroll taxes

- Failed to report $1 million in income

- Paid employees off the books

**Ballard Spahr** LLP

7

Confidential Treatment Requested FOIA Exempt

## Identity and Background of Controllers

- Primus was President and CEO of First Bank of Delaware ("FBD") from 2009 to 2012

  - PPM Bio Does Not Reference FBD Service

  - In 2012, FBD settled DOJ claims it defrauded customers, paying $15.5 million in penalties and reimbursements

**Ballard Spahr** LLP

8

Confidential Treatment Requested FOIA Exempt



# Misrepresentations Regarding Investment Risk

**Ballard Spahr** LLP

9

Confidential Treatment Requested FOIA Exempt

# Investment Risk

Princeton Representations:

· MicroBilt database covered 4,000+ subprime lenders

· Princeton would "cherry pick" 50-100 of the least risky lenders for credit lines

· MicroBilt would perform "real time" monitoring of risks to credit lines

**Ballard Spahr**
LLP

10

Confidential Treatment Requested FOIA Exempt

# Investment Risk

- Argon Credit Line Currently in Bankruptcy
  - Credit Line Originally $20 Million; After Management Defalcations Discovered by Princeton, Line Increased to $37.5 Million and Renewed
  - $11.8 Million Impairment Recorded; Addition $10 Million Impairment Announced

- Bristlecone Credit Line Currently In Bankruptcy

- Failure to disclose risky (and potentially illegal) tribal lending (discussed separately below)

- Failure to disclose that MicroBilt did not have the capability to do "real-time" monitoring

**Ballard Spahr**
LLP

11

Confidential Treatment Requested FOIA Exempt

## Investment Risk

## Tribal Lending Entities

- Credit Lines 2, 4, 7, 8, 10, 11 and 12.  Over $32 Million of current lines

- Predatory Lenders Also Known As "Rent-A-Tribe" Schemes

- Ostensible Lender Chartered By Indian Nation, Supposedly Insulating Activities From State Usury Laws

- Several Lenders Have Been Prosecuted or Sued by State and Federal Authorities (some involved here – Think Finance and Plain Green)

- Annualized Interest Rates As Much As 900%

- Most Vulnerable Borrowers With the Greatest Credit Risk and Default Rates

**Ballard Spahr** LLP

12

Confidential Treatment Requested FOIA Exempt



# Conflicts Of Interest And Diversions

**Ballard Spahr** LLP

13

Confidential Treatment Requested FOIA Exempt

# Conflicts of Interest

**Management Fee.** With respect to any Class A Limited Partner, the General Partner will receive a monthly management fee, calculated at an annual rate of 2% (0.16675% per month) (the "Management Fee") of such Class A Limited Partner's Capital Account.

The Management Fee will be paid monthly in advance, based on the value of such Limited Partner's Capital Account, as of the first day of the month. The General Partner may elect to reduce, otherwise modify or waive the Management Fee with respect to any Limited Partner. If Capital Contributions are made at any time other than at the beginning of a calendar month, a pro rata portion of the Management Fee will be paid to the General Partner in respect of such Capital Contribution (based on the annual number of days remaining in such partial month). If Capital Accounts are withdrawn at any time other than at the end of a calendar month, the full monthly Management Fee will be paid to the General Partner for such partial month.

**Expenses.** The Fund bears and shall be responsible for its own expenses, including, but not limited to, investment related expenses such as the Fund's brokerage commissions, interest on margin accounts and other indebtedness, custodial fees, bank service fees, withholding and transfer fees, taxes, systems and technology expenses, third party research tools, corporate licensing fees, legal and auditing expenses, accounting, fund administration, filing fees and expenses (including regulatory filings made in respect of the Fund or the Master Fund such as Form PF preparation and filing expenses), outsourced risk management advisory and software, investment related consultants and travel costs that are research related, expenses incurred with respect to the preparation, duplication and distribution to Limited Partners and prospective Limited Partners of Fund offering documents, annual reports and other financial information, any other services or service provider expenses deemed necessary by the General Partner on behalf of the Fund.

The General Partner bears its own expenses, including office space and utilities, computer equipment and software (not otherwise paid by the Fund) and secretarial, clerical, employee related and other personnel, except as assumed by the Fund or except as paid for through the permitted use of commission dollars.

At the option of the General Partner, the organizational expenses of the Fund may be amortized over a period of 60 months from the date the Fund commenced operations. The amortization of organizational expenses over 60 months is not in accordance with U.S. generally accepted accounting principles and could result in an exception opinion in the auditors' report in the annual audited financial statements if the effect of difference between amortization and recognition of these expenditures when incurred is deemed material to the financial statements.

## CONFLICTS OF INTEREST

**General Partner Conflicts of Interest.** The General Partner will use its best efforts in connection with the purposes and objectives of the Fund and will devote as much of its time and effort to the affairs of the Fund as it deems necessary and appropriate to accomplish the purposes of the Fund. Under the terms of the Partnership Agreement, the General Partner and its directors, members, partners, shareholders, officers, employees, agents and affiliates (hereinafter referred to as the "Affiliated Parties"), may conduct any other business, including any business within the securities industry, whether or not such business is in competition with the Fund. Without limiting the generality of the foregoing, the Affiliated Parties may act as investment adviser or investment manager for others, may manage funds, separate accounts or capital for others and may serve as an officer, director, consultant, partner or stockholder of one or more investment funds, partnerships,

securities firms or advisory firms. In this regard, it should be noted that in the future the General Partner and the Affiliated Parties may in the future act as the investment manager to other investment funds and investment accounts, including offshore investment funds and other U.S. investment partnerships. Such other entities or accounts may have investment objectives or may implement investment strategies substantially similar or different to those of the Fund. In addition, the Affiliated Parties may, through other investments, including other investment funds, have interests in investments in which the Fund invests as well as interests in investments in which the Fund does not invest. As a result of the foregoing, the Affiliated Parties may have conflicts of interest in allocating their time and activity between the Fund and other entities, in allocating investments among the Fund and other entities and in effecting transactions for the Fund and other entities, including ones in which the Affiliated Parties may have a greater financial interest.

The General Partner may retain Affiliated Parties to track or analyze investments in real time, and may further require each entity engaged in the business of originating debt on behalf of the Fund to use particular software or services in connection with such investments. In certain instances, the Affiliated Parties will earn a fee in connection with the General Partner's or each such entity's use of such software or services. To the extent that any third party is unwilling or unable to use the software required by the General Partner, the Fund will have fewer investment opportunities. Further, because both the Fund and its debt originators will rely on the same software, any limitation or error in this technology may have more of an adverse effect on the Fund's performance than if the various parties used separate software solutions.

**Ballard Spahr** LLP

14

Confidential Treatment Requested FOIA Exempt

PPMs Represent that Managing Partner (PAF) compensated solely through Management and Performance Fees, aligning interests with investors. MicroBilt's compensation consists solely of (a) *pro rata* share of Management and Performance Fees (based on PAF ownership) and (b) services fees paid by PAF out of its Management and Performance Fees. (PPM, at 12-13 (management fees); PPM, at 17-18 (conflicts)).

## Conflicts of Interest

 PRINCETON
ALTERNATIVE FUNDING

4/15/015

David L. Ford
William R. Skinner
Fenwick & West LLP
801 California Street
Mountain View, CA 94041

Dear Messrs. Ford and Skinner:

In connection with your memorandum to be delivered to Burger Direct Lending Fund, PLC ("DLF") regarding its investment (the "Proposed Investment") in Princeton Alternative Income Fund, LP and/or Princeton Alternative Income Offshore Fund, Ltd. (each, the "Princeton Fund"), the undersigned officer of the Princeton Fund hereby certifies and represents certain facts. For purposes of these representations, it is understood that Princeton Fund is contemplating acquiring certain loans to be originated by qualified originators (each, an "SPV"). With this understanding, the undersigned officer of Princeton Alternative Funding LLC, hereby certifies and represents that each of the following facts are true, correct and complete in all respects at the time of this letter, and thereafter where relevant.

1. SPV is a separate corporation, none of the stock of which is owned by either (a) individuals or entities that have any direct or indirect equity ownership in the Princeton Fund or Princeton Alternative Funding LLC or (b) individuals who are officers, employees, members or managers of the Princeton Fund or Princeton Alternative Funding LLC or of any other entities with an advisory or operational role with respect to the Princeton Fund. None of the individuals or entities described in the preceding sentence will have any economic interest in the SPV or its operations.

2. SPV will fund any loans that it originates from its own independent source of capital not supplied, directly or indirectly, from any individuals or entities described in representation (1) above.

3. At the time that SPV funds the loans in question, the Princeton Fund will not have an unconditional obligation or commitment to purchase such loans, and for at least 72 hours from the time SPV funds such loans, any purchase commitment of the Princeton Fund in respect of such loans will be subject to closing conditions or terms for a Material Adverse Change with respect to the underlying borrower's financial condition or solvency, value of any collateral, and general conditions of the credit / financial markets. SPV will invest itself in the owner of such loans for tax and regulatory purposes during the 72-hour (or greater) period.

4. The Princeton Fund will not receive, directly or indirectly, any origination fees, underwriting fees, or fees from the performance of services associated with SPV's origination of the loans.

5. Neither Princeton Fund, nor any individuals who are officers, employees, managers, individuals or advisors of or to the Princeton Fund or Princeton Alternative Funding LLC will participate in any of the following activities: (i) developing business from and soliciting potential borrowers' participation with the SPV; (2) negotiating or directing the terms of loans with borrowers of the SPV; (3) exercising any control over the manner and means by which SPV conducts its lending and origination activities; or (4) engaging in any other contact with borrowers of the SPV.

I understand that Fenwick & West, LLP, will rely upon the foregoing representations in rendering its opinion as to certain tax consequences of the Proposed Investment. I further recognize that (i) your opinions will be based on the representations set forth herein, (ii) your opinions will be subject to certain limitations and qualifications including that they may not be relied upon if any such representations are not accurate in all material respects, and (iii) your opinions will not address any tax consequences of the proposed transaction or any action taken in connection therewith except as expressly set forth in such opinions. The undersigned will promptly and timely provide written notification if it is discovered that any of the above certifications ceases to be true, correct and complete at or prior to the time the Proposed Investment is completed.

Sincerely,

Princeton Alternative Income Offshore Fund, LP.

By: *Robert Farrell*
Name: Robert Farrell
Title: President

**I**

### Representation letter states:

- Originators are not owned by any Princeton employees, officers agents or affiliates

- Capital for origination does not come from any employees, officers, agents or affiliates of Princeton

- No individuals who are officers, employees, managers, individuals or advisors of the fund will "participate in engaging in any other contact with borrowers of the originators."

15

Confidential Treatment Requested FOIA Exempt

## Conflicts of Interest

### Undisclosed MicroBilt Fees

- MicroBilt, Burgess and Affiliates Receive Millions In Undisclosed Fees from the Fund

- Credit Line Recipients Required to Purchase MicroBilt Services

- MicroBilt Affiliates "Hired" To Collect Consumer Loans For Argon and Other Credit Lines

- 9 of 12 Credit Lines Taken Over by MicroBilt

- The Fund, PAF and MicroBilt Refuse to Provide a Full Accounting

**Ballard Spahr**
LLP

16

Confidential Treatment Requested FOIA Exempt

## Conflicts of Interest

## Tribal Lending Entity ("TLE") Relationships

- 2013 Contract between MicroBilt Affiliate (Rosebud Management) and Sioux Nation entity (Rosebud Lending) gives Rosebud Management "exclusive right and obligation to assist [Rosebud Lending] to develop, manage, operate and maintain" TLEs

- Rosebud Management responsible for "[a]ll business and affairs," subject to veto by Board, half of which is appointed by Rosebud Management.

- Rosebud Management paid 1% of Net Revenue

- Significant payments to third-parties

- HP Funding, owned by Primus, paid consulting fees

- Applies to Credit Lines 2, 4, 10 and 11 ($25.6 million)

**Ballard Spahr** LLP

17

Confidential Treatment Requested FOIA Exempt

# Conflicts of Interest



**Ballard Spahr** LLP

18

Confidential Treatment Requested FOIA Exempt

# Conflicts of Interest



**Ballard Spahr**
LLP

19

Confidential Treatment Requested FOIA Exempt

# Conflicts of Interest



**HP Partners Include:**
**Alonzo J. Primus**

Ballard Spahr LLP

Confidential Treatment Requested FOIA Exempt



Confidential Treatment Requested FOIA Exempt

## Conflicts of Interest

Credit Origination By Related Parties

- Credit Line 9 Originated by Westminster National, a Burgess Company

- An Entity Called Fintech Received Origination Fees For Several Credit Lines.

  - Fintech is identified as being operated by Rosebud Lending

  - We have not been able to determine if Fintech is related to, or shared fees with, Burgess or MicroBilt.

**Ballard Spahr**
LLP

22

Confidential Treatment Requested FOIA Exempt

# Conflicts of Interest

Based on Borrower data, MicroBilt could receive as much as 1% of loan balance each month. 1% multiplied by $66.7M capital multiplied by 12 months = over $8M annually

## Line 4

|  | Closing Balance [1] | Microbilt Fees [2] | Fee Percentage |
|---|---|---|---|
| Sep-15 | $  2,500,533 | 18,596 | 0.7% |
| Oct-15 | $  3,232,577 | 31,388 | 1.0% |
| Nov-15 | $  3,877,788 | 42,180 | 1.1% |
| **Total** | **$  9,610,897** | **$  92,164** | **1.0%** |

## Line 7

|  | Closing Balance [1] | Underwriting Fee [4] | Fee Percentage |
|---|---|---|---|
| Nov-15 | $  4,527,143 | 41,103 | 0.9% |
| Dec-15 | $  6,936,706 | 83,508 | 1.2% |
| May-16 | $  8,908,927 | 85,321 | 1.0% |
| **Total** | **$  20,372,776** | **209,932** | **1.0%** |

## Line 11

|  | Closing Balance [1] | Underwriting Fee [3] | Fee Percentage |
|---|---|---|---|
| Oct-16 | $  268,600 | 3,920 | 1.5% |
| Nov-16 | $  3,997,307 | 187,600 | 4.7% |
| Dec-16 | $  13,063,631 | 443,660 | 3.4% |
| Jan-17 | $  13,875,846 | 57,820 | 0.4% |
| Feb-17 | $  13,692,252 | 13,720 | 0.1% |
| Mar-17 | $  13,157,846 | 14,980 | 0.1% |
| Apr-17 | $  12,783,283 | 12,110 | 0.1% |
| May-17 | $  11,827,828 | 13,790 | 0.1% |
| Jun-17 | $  9,585,261 | 17,290 | 0.2% |
| Jul-17 | $  13,096,223 | 203,350 | 1.6% |
| Aug-17 | $  13,729,409 | 86,730 | 0.6% |
| Sep-17 | $  13,351,661 | 27,790 | 0.2% |
| **Total** | **$  132,429,147** | **1,082,760** | **0.8%** |

Confidential Treatment Requested FOIA Exempt



# FAILURE TO REDEEM

**Ballard Spahr** LLP

24

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem



The Fund's governing documents permit investors to withdraw their investment on 180-days notice. The timeline was reasonable given representations that (a) consumer borrowers take short-term loans; (b) credit lines are callable at any time; and (c) credit lines are subject to renewal every year.

**Ballard Spahr**
LLP

25

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem

## Timeline

- <u>March 28, 2016</u>:  Ranger Redemption Notice; Payout Deadline Extended by Agreement to October 30, 2016

- <u>October 28, 2016</u>:  Princeton Purports to Suspend Redemption and to Mandatorily Redeem Ranger

- <u>April 2017</u>:  Almost $6 Million of Argon Collections are Not Returned, But Redeployed to Other Lines (likely Rosebud)

- <u>December 12, 2017</u>:  Not a Penny of Capital Redeemed; No Commitment on When Payment Will Be Made

**Ballard Spahr**
LLP

26

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem

October 28, 2016 Mandatory Withdraw

Letter to Ranger

Dear Nim,

We have received request(s) to withdraw the remaining balance of Ranger Specialty Income Fund, LP's Capital Account in Princeton Alternative Income Fund, LP (the "Domestic Fund") and redeem all of Ranger Direct Lending Trust's Shares in Princeton Alternative Income Offshore Fund, Ltd. (the "Offshore Fund" and together with the Domestic Fund, the "Funds") dated March 28, 2016. The Ranger Funds and Princeton Alternative Funding, LLC ("PAF") agreed to extend the effective date of that to October 31, 2016. The purpose of this letter is to set forth the procedures that PAF will implement on behalf of the Funds in order to liquidate your investments in the Funds. PAF serves as the General Partner of the Domestic Fund and the Investment Manager of the Offshore Fund. Capitalized terms used and not defined in this letter shall have the meaning ascribed to such terms in the Confidential Private Placement Memoranda of the Funds, as applicable (the "PPMs").

PAF has determined that it is in the best interests of the Funds and their other investors to mandatorily redeem the interests of the Ranger Funds. PAF will deem today, October 28, 2016 to be the Withdrawal Date and Redemption Date applicable to the redemptions of your

Following the creation of the Liquidating Vehicles and the transfer of the Funds' portfolio investments thereto, the Liquidating Vehicles will thereafter (1) receive payments of principal, interest and other income or proceeds with respect to the portfolio investments so transferred, and (2) be charged or allocated both (A) the expenses that would otherwise be charged to the Funds as set forth in the PPMs and other governing documents of the Funds, and (B) the expenses attributable to satisfying your redemption request and the creation, operation and maintenance of the Liquidating Vehicles, until such time as all such portfolio investments have been repaid, written off, disposed of or otherwise liquidated.

I have attached a "vintage maturity" schedule showing when the lines are expected to mature. Such lines will not be rolled over, and instead as repayments are received, they will be used to meet the redemption payment obligations, unless other sources of cash are available to the Funds.

**Ballard Spahr** LLP

- Princeton promises to transfer *pro rata* share of credit lines to "liquidating trusts" for benefit of Ranger, with net proceeds used to redeem Ranger capital

- All 11 existing credit lines set to expire in or before November 2017

- "Such lines will not be rolled over, and instead as repayments are received, they will be used to meet the redemption payment obligations, unless other sources of cash are available to the Funds."

27

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem

## Ranger and FTI Estimate the PAIF Payment Plan could take over ten years

From: Nowak, Gregory J. [mailto:Nowakg@pepperlaw.com]
Sent: Wednesday, June 14, 2017 11:59 AM
To: Nim Hacker
Cc: Jay Thompson ; 'Howard Davner' ; 'Jack Cook'
Subject: Plan for repaying Ranger.docx

Nim—

Here is the plan that the PAIF team has developed for implementing the redemption of Ranger's interests. The first part is a summary of the investments to date by Ranger and other investors. The bolded lines show the actual steps that PAIF intends to take, of course governed by available cash.

I will call you later today to discuss (I am travelling this week so my connectivity is spotty).

I know Howard will also be sending the return estimates shortly as well.

Greg

This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. If you are not the intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. The information contained in this communication may be confidential and may be subject to the attorney-client privilege. If you are the intended recipient and you do not wish to receive similar electronic messages from us in the future then please respond to the sender to this effect.

- The proposal shows at least one new credit line since October 28, 2016 – No. 12 with a $2 million commitment. "The last new commitment was made on 10/10/16."

- Total commitments rose from $74.25 million shown in October 28, 2016, letter to about $100 million.

- Fund represents it will pay "normal remittance" of $700,000 per month, plus $250,000 per month toward redemption, plus other periodic payments.



**CX-276**

CONFIDENTIAL                CX-276 - p. 1 of 5

RANGER_ARB_0064410

## Ballard Spahr
LLP

28

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem

| Credit Line | Total Line (per 10/28/2016 Letter) | Total Line of Credit Committed per LSA (per June 2017 Proposed Plan) | Increase/ (Decrease) | Opened | Renewal |
|---|---|---|---|---|---|
| 1 | $ 1,750,000 | $ 2,500,000 | $ 750,000 | Mar-15 | Mar-17 |
| 2 | 500,000 | 600,000 | 100,000 | | Apr-17 |
| 3 | 37,500,000 | 37,500,000 | 0 | May-15 | May-17 |
| 4 | 5,000,000 | 5,500,000 | 500,000 | Jun-15 | Jun-17 |
| 5 | 1,500,000 | 2,500,000 | 1,000,000 | Jun-16 | Jul-17 |
| 6 | 5,000,000 | 15,000,000 | 10,000,000 | Aug-15 | Aug-17 |
| 8 | 5,000,000 | 5,000,000 | 0 | Jun-16 | Jun-17 |
| 9 | 15,000,000 | 15,000,000 | 0 | Nov-15 | Nov-17 |
| 10 | 1,500,000 | 2,500,000 | 1,000,000 | Sep-16 | Sep-17 |
| 11 | 1,500,000 | 17,000,000 | 15,500,000 | Oct-16 | Oct-17 |
| 12 | | 2,000,000 | 2,000,000 | Sep-16 | Sep-17 |
| Total | $74,250,000 | $105,100,000 | $30,850,000 | | |

Confidential Treatment Requested FOIA Exempt

# Failure to Redeem

### Changes in Princeton Loan Balances

| | 7/1/2017 | 9/1/2017 | 11/1/2017 | Increase 7/1/2017 to 11/1/2017 | Increase 9/1/2017 to 11/1/2017 |
|---|---|---|---|---|---|
| Line 1 | $ 2,495,937 | $ 2,518,856 | $ 2,570,619 | $ 74,681 | $ 51,762 |
| Line 2 | 128,109 | 130,042 | 131,009 | 2,900 | 967 |
| Line 3 | 23,544,893 | 23,671,389 | 23,733,889 | 188,996 | 62,500 |
| Line 4 | 4,166,210 | 5,829,241 | 6,397,091 | 2,230,880 | 567,850 |
| Line 5 | 2,454,234 | 2,525,073 | 2,358,689 | (95,545) | (166,384) |
| Line 6 | 6,664,721 | 7,988,422 | 8,396,412 | 1,731,691 | 407,990 |
| Line 7 | - | - | - | - | - |
| Line 8 | 3,293,293 | 3,840,487 | 4,311,514 | 1,018,221 | 471,028 |
| Line 9 | 9,919,295 | 10,188,110 | 10,253,005 | 333,710 | 64,895 |
| Line 10 | 1,854,702 | 1,839,983 | 1,908,211 | 53,509 | 68,228 |
| Line 11 | 9,585,261 | 13,729,409 | 13,175,047 | 3,589,786 | (554,362) |
| Line 12 | 575,226 | 533,148 | 520,013 | (55,213) | (13,135) |
| Total | $ 64,681,882 | $ 72,794,160 | $ 73,755,499 | $ 9,073,617 | $ 961,338 |

**Ballard Spahr**
LLP

30

Confidential Treatment Requested FOIA Exempt



# VALUATION ISSUES

**Ballard Spahr** LLP

31

Confidential Treatment Requested FOIA Exempt

# Rockport Valuation – Failed to Provide

Exhibit 4

**Princeton Alternative Income Fund**
**Credit Line 3**
**Portfolio**

| | 16-Sep | 16-Oct | 16-Nov | 16-Dec | 17-Jan | 17-Feb | 17-Mar |
|---|---|---|---|---|---|---|---|
| ■ X | $ 1,444,798 | $ 1,205,028 | $ 512,952 | $ 434,185 | $ 127,766 | $ 94,888 | 83,331 |
| Pay Aliasce | $ 104,076 | $ 265,035 | $ 603,640 | $ 1,038,885 | $ 1,109,786 | $ 1,014,878 | 691,479 |
| | $ - | $ - | $ - | $ - | $ 54,640 | $ 173,463 | 211,998 |
| Totals | $ 1,548,874 | $ 1,470,063 | $ 1,116,592 | $ 1,473,070 | $ 1,292,192 | $ 1,283,229 | 986,808 |
| Returns | | $ 114,992 | $ 616,685 | $ 386,553 | $ 616,893 | 383,333 |
| % | 0.00% | 0.00% | 10.30% | 41.86% | 29.91% | 48.07% | 38.85% |
| Net Cash Receipts from the Portfolio | $ 1,548,874 | $ 1,470,063 | $ 1,901,600 | $ 856,385 | $ 905,639 | $ 666,336 | $ 603,475 |

| | | |
|---|---|---|
| 7 month cash receipts run rate | $ | 7,052,372 |
| Average cash receipts per mth | $ | 755,611 |
| Annual Simple Interest (12X Avg CR) | $ | 9,067,335 |
| Average Portfolio Interest rate | | 69% |
| Principal | $ | 13,141,065 |
| Future Cash Stream from Simple Interest stream | $ | 17,379,059 |
| Discount Period ( remaining average terms) | | 1.90 |

| Credit Line ■ | Total | $ 34,998,644 | | **Principal** | | | |
|---|---|---|---|---|---|---|---|
| | | | | | Present Value Factor @ | 10.0% | 0.8344 |
| Eligible Cash Balance 12-31-2016 | $ 288,221 | | | | | | $ 10,964,390 |
| Principal | $ 10,964,390 | | | **Interest** | | | |
| DCF of Interest Cash Stream | $ 12,290,849 | | | | Present Value Factor @ | 20.0% | 0.7072 |
| | | $ 23,543,460 | | | | | $ 12,290,849 |
| Allowance for reserve | | $ 11,455,184 | | | | | |

Confidentia.

PRINCETON...016641

Confidential Treatment Requested FOIA Exempt

# Credit Line 3 – Argon Portfolio

| | 1/31/2017* | 2/28/2017* | 3/31/2017* | 4/30/2017 | 5/31/2017 | 6/30/2017 | 7/31/2017 | 8/31/2017 | 9/30/2017 | 10/31/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| Argon X - ACH & Debit Card Payments | $182,406.40 | $255,523.28 | $299,781.77 | $152,277.10 | $153,090.84 | $155,510.79 | $144,205.96 | $158,819.61 | $131,839.66 | $157,669.54 |
| AR - Remotely Created Checks | $1,109,786.00 | $1,014,878.00 | $691,479.00 | $619,391.02 | $442,978.70 | $355,599.55 | $206,743.34 | $230,225.75 | $306,314.57 | $221,685.74 |
| Total Deposits | $1,292,192.40 | $1,283,219.13 | $986,807.55 | $771,668.12 | $596,069.54 | $511,110.34 | $350,949.30 | $389,045.36 | $438,154.23 | $379,355.28 |
| Customer Loan Refunds | | | $9,827.83 | $12,222.54 | $9,053.04 | $4,168.51 | $0.00 | $0.00 | $8,135.16 | $0.00 |
| Total Check Returns (NSF) | $386,553.24 | $616,893.42 | $383,462.74 | $225,163.84 | $88,586.58 | $108,427.63 | $32,520.91 | $56,979.61 | $96,698.35 | $78,726.89 |
| % | 29.91% | 48.07% | 38.86% | 29.18% | 14.86% | 21.21% | 9.27% | 14.65% | 22.07% | 20.75% |
| Gross Cash Receipts (net of NSF & Refunds) | $905,639.16 | $666,325.71 | $593,516.98 | $534,281.74 | $498,429.92 | $398,514.20 | $318,428.39 | $332,065.75 | $338,320.72 | $300,628.39 |

*- Jan, Feb and Mar total deposits were elevated as PAIF recovered cash held in escrow and by third party payment processors

| Initial reserve analysis | | |
|---|---|---|
| Credit Line 3 Argon | Total | $ 34,998,644.12 | <- from 12/31/16 Interest Schedule |
| Eligible Cash Balance 12-31-2016 | $ 288,220.78 | |
| Principal | $ 13,141,065.43 | |
| DCF of Interest Cash Stream | $ 9,826,347.04 | |
| | $ 23,255,633.25 | |
| Allowance for reserve | $ 11,743,010.87 | |

| New analysis of cash flows | | |
|---|---|---|
| Credit Line 3 Argon | Total | $ 34,998,644.12 |
| Eligible Cash Balance | $ ... |
| Principal | $ 6,337,354.70 |
| DCF of Interest Cash Stream | $ 6,559,162.11 |
| | $ 12,896,516.81 |
| Total Allowance required for reserve | $ 22,102,127.31 |
| Previous reserve taken | $ 11,743,010.87 |
| Current Reserve Required | $ 10,359,116.44 |

| 6-month total | $2,186,387.37 | <- total Gross Receipts May-Oct 2017 |
|---|---|---|
| Monthly Average | $364,397.90 | <- 6-month total divided by 6 |
| Annual Simple Interest | $4,372,774.74 | <- monthly average times 12 |
| Average Portfolio Interest Rate | 69% | <- average APR |
| Quick Calc on Eligible Interest | $6,337,354.70 | <- Annual interest divided by average APR |
| Future Cash Flow | $6,559,162.11 | <- 18-months worth of average Gross cash receipts |
| Discount Period (remain avg term) | 1.54- 18-months | |
| Discount Factor | 0% 1.0000 | |
| Discounted Cash Flow Stream | $6,559,162.11 | <- full value of 18-month gross cash receipts |

Confidential Treatment Requested FOIA Exempt

# Credit Line 11 – Marked AEO/Not Provided

LINE 11 LENDING
PROGRAM YTD INCOME STATEMENT THROUGH
September 2017

| | | YTD ACTUAL | COMMENTS |
|---|---|---|---|
| 1 | Cash Finance Revenue | 1638945.15 | Cash revenue collected |
| 2 | Loan Losses | -13617461.29 | Cash losses |
| 3 | Management Fee | -711597.16 | Management fee of 0.75% on average principal outst |
| 4 | Net Profit | 2060392.7 | |
| 5 | Admin Agency Fee | -290961.83 | Admin agency fee of 8% |
| 6 | Cost of Sales | -213557.51 | Settlement, ACH, Debit Card and ETR's |
| 7 | Underwriting Fee | -447580 | $70 per new & former loan |
| 8 | Marketing - New Fee | -990400 | $150 per new loan |
| 9 | Marketing - Former Fee | -43260 | $30 per former loan |
| 1094 | Servicing Fee | -594940 | $8 per active account |
| 1094 | Operating Income / (Expenses) | 0 | |
| 1094 | Interest Expense | -2387241.92 | |
| 13 | Net Program Revenue | -2907548.56 | |
| | Reimbursable Program Expenses: | | |
| 14 | Marketing Fees | 0 | |
| 15 | IT Licensing Fees | 0 | |
| 16 | Processing Fees | 0 | |
| 17 | Interest Expense | 0 | |
| 18 | Internal Tribal Expenses | 0 | |
| 19 | Other Reimbursable Expenses | 0 | |
| 20 | Total Expenses | 0 | |
| 21 | Net Program Profit | -2907548.56 | |
| 22 | Loans Funded -New for YTD 2016 | 4952 | |
| 23 | Loans Funded -Former for YTD 2016 | 1442 | |
| 24 | Total Loans Funded 2016 | 6394 | |

PRINCETON_AEO_0000205

1

**CX-289 - p. 5 of 18**

**Ballard Spahr**
LLP

34

Confidential Treatment Requested FOIA Exempt



# OTHER VICTIMS

**Ballard Spahr**
LLP

35

Confidential Treatment Requested FOIA Exempt

## Other Victims

### Covenant Multi Family Office

·   Invested in December 2016, 10 months after Ranger's Redemption Notice

·   Asked about Ranger relationship and was told it was great

·   Received Same Representations About Investment Strategy, Real-Time Monitoring and Unconflicted Management

·   Not told about Burgess

·   Demanded Redemption on March 31, 2017; No Payments Received

·   Told by Cook that Princeton was Trying to Launch Another Fund

**Ballard Spahr**
LLP

36

Confidential Treatment Requested FOIA Exempt



# DISCOVERY LIMITATIONS

**Ballard Spahr** LLP

37

Confidential Treatment Requested FOIA Exempt

# Discovery Limitations

We Are Unable To Identify Or Quantify The Full Scope Of Self-dealing And Other Breaches Because Of Limitations On Discovery In The Arbitration.  We Were Unable To Obtain:

- Agreements among interrelated parties creating conflicts of interest

- Full Electronically Stored Information ("ESI") searches of data including internal email communications among Princeton and MicroBilt employees and consultants

- Significant Discovery from MicroBilt and other Princeton-related entities

- Depositions

**Ballard Spahr**
LLP

38

Confidential Treatment Requested FOIA Exempt