

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

**DIVISION OF**
**ENFORCEMENT**

November 14, 2024

**VIA CM/ECF FILING**

The Honorable J. Brendan Day, U.S.M.J.
Clarkson S. Fisher Building & Courthouse
402 East State Street
Trenton, New Jersey 08608

> **Re:** **_SEC v. Princeton Alternative Funding, LLC, et al._,**
> **Case No. 21-12971 (RK-JBD) LB**
> **Defendants' Subpoena for Notes and Deposition of SEC Attorneys**

Dear Judge Day:

Pursuant to the Court's October 10, 2024 Order, Plaintiff Securities and Exchange Commission ("SEC"), respectfully submits this supplemental letter brief in response to Defendants' letter brief, which was filed on October 31, 2024.

**I.      Introduction**

Defendants seek the SEC's production of all notes taken by four SEC attorneys during interviews in the investigation (the "SEC Notes"), which preceded the filing of the Complaint in this matter.  Defendants also seek to take the depositions of these four SEC attorneys – one of whom, James Smith, is lead trial counsel in this case.  The Court should deny this request in its entirety.

Defendants' arguments regarding the production of the SEC Notes fail.  They have failed to satisfy the extremely high burden they must meet before the Court can require the SEC to turn over this protected information.  Defendants claim that the SEC Notes are nothing more than fact work product, making them discoverable upon a showing of substantial need and inability to obtain the information elsewhere without undue hardship. However, the notes of an attorney are opinion work product:  precisely the type of materials that the Supreme Court identified in _Upjohn_ as deserving of special protection under the work product doctrine.  _See Upjohn Co. v. United States_, 449 U.S. 383, 400 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes.").  For that

reason, "[n]otes and memoranda of an attorney or an attorney's agency, from a witness interview are opinion work product entitled to almost absolute immunity." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). That the attorneys' notes also contain facts conveyed by witnesses during their interviews does not remove this work product protection. *See Director, Office of Thrift Supervision v. Vinson and Elkins*, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997).

Even if the Court were to assume that the SEC Notes are fact, not opinion, work product – which is not the case – Defendants still fail to show that they cannot obtain the same information through other means without undue hardship. That is a fatal flaw. *See SEC v. Stanard*, No. 06 CIV. 7736 (GEL), 2007 WL 1834709 (S.D.N.Y. June 26, 2007) ("[D]efendants are free to question each of the witnesses at their depositions, and at trial, concerning the witnesses' statements to the SEC at earlier interviews."). There is nothing preventing Defendants from deposing, in this litigation, *the actual witnesses* who were interviewed by the SEC. As we explain below, although Defendants took the depositions of two of the witnesses – Robert Farrell and Robert Szostak – in connection with a state court litigation, neither witness indicated they would refuse to testify if deposed in this litigation. Nor did those witnesses show a failure to recall the relevant events that underpin this action. Moreover, Defendants have failed to explain or even address why the SEC's production of more than 560 emails with so-called whistleblowers does not provide the information they seek or would not assist them in obtaining through discovery in this action information from Farrell, Szostak, and John Barrile (who Defendants contend refused to answer written discovery in the state court action). At bottom, Defendants have not shown a substantial need for the SEC Notes.

Finally, Defendants' request to depose four SEC attorneys should be denied. At the hearing and in its Order, the Court asked Defendants to make a detailed proffer in writing regarding what information they are seeking from the SEC attorneys by way of deposition and for what purpose. *See* Hearing Tr. 45:7-9;[1] ECF No. 135. Defendants' supplemental

---

[1] "Hearing Tr_" is a citation to the transcript of the hearing conducted on October 9, 2024 in this matter.

brief wholly ignored the Court's request; it is devoid of any detail regarding what information they seek to solicit from the SEC attorneys. That failure, by itself, warrants the rejection of Defendants' request to depose the SEC attorneys. Moreover, Defendants have not met their substantial burden to justify deposing the SEC attorneys. To be clear, the SEC attorneys are *not* fact witnesses, but the individuals who the attorneys interviewed are. Defendants are free to depose those percipient witnesses to obtain whatever relevant information Defendants seek. But what they cannot do is leapfrog those with first-hand knowledge of the relevant events and depose SEC attorneys who lack such knowledge.

**II.      The Federal Rules Protect All Attorney Work Product**

A party is ordinarily prohibited from discovering "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). As the Supreme Court has explained, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties . . . . Proper preparation of a client's case demands that he assemble information, sift what [she] considers to be relevant from the irrelevant facts, prepare his legal theories and plan [her] strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *see Upjohn*, 449 U.S. at 396 ("Discovery was hardly intended to enable a learned profession to perform its function . . . on wits borrowed from the adversary.").

"[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production . . . ." *Hickman*, 329 U.S. at 512. To overcome this burden, Defendants must show that they: (1) have a substantial need for the materials to prepare their case, and (2) it cannot, without undue hardship, obtain their substantial equivalent by other means. *Id.* Rule 26(b)(3)(A)(ii).

However, even if Defendants could satisfy this initial burden, the Court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of the party's attorney or other representative." *Id.* Rule 26(b)(3)(B). "Opinion

work product . . . is more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996).  For that reason, "[c]ore or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances."  *In re Cedant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2nd 573, 577 (9th Cir. 1992) (permitting discovery of opinion work product in the rare circumstance in which "mental impressions are *at issue* in case and the need for the material is compelling."); *Baker*, 209 F.3d at 1054 ("[O]pinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.").

**III.  The SEC Attorneys' Notes Are Not Discoverable Because They Are Classic Opinion Work Product**

Defendants do not dispute that the SEC Notes are attorney work product.  Rather, they claim they have a substantial need for the "factual, non-opinion work product portion of the SEC notes and summaries from interviews that it conducted that relate to the facts and circumstances underlying this case."  (Def. Br. at 3).  Their argument runs aground because "[m]emoranda summarizing oral interviews may indirectly reveal the attorney's mental processes, his opinion work product [and therefore] such documents will be discoverable only in a rare situation." *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979).  "Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant.  In this way, attorney notes are akin to an attorney's determination as to which documents are important to a case – the latter being something we have also held to be protected work product." *Baker*, 209 F.3d at 1054.  For that reason, "[n]otes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." *Id; SEC v. Downe*, No. 92 CIV. 4092 (PKL), 1994 WL 23141, at *2 (S.D.N.Y. Jan. 27, 1994) ("[N]otes of an attorney concerning witness interviews are precisely the type of materials that the Supreme Court identified in *Upjohn* as deserving of special protection.") (citing *Upjohn*, 449 U.S. at 400).

Corey Schuster and Jessica Neiterman, the SEC attorneys whose notes are at issue, [2] have confirmed in their respective, attached declarations that their notes do not consist of or contain substantially verbatim statements made by the witnesses. *See* Declaration of Corey Schuster ("Schuster Decl.") at ¶ 4; [3] Declaration of Jessica Neiterman ("Neiterman Decl.") at ¶ 4. [4] Instead, the notes contain their mental impressions, as reflected by what they chose to write down regarding the witnesses' remarks. *Id.*

In addition, the SEC attorneys shaped the topics that were covered and framed the questions that were asked in their efforts to assist the Commission in determining whether to authorize this litigation. *Id.* In that regard, their notes are not akin to a FBI Form 302, which is meant to reflect an almost verbatim recitation of the witness interview. *See SEC v. Straus*, No. 09 CIV. 4150 RMB/HBP, 2009 WL 3459204, at *5 (S.D.N.Y. Oct. 28, 2009) ("By definition, summaries are not *verbatim* copies and necessarily involve some level of judgment in deciding what to note and what not to note."); *Director of Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("At some point, however, a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the *lawyer* reveals his view of the case."). Thus, the SEC attorneys' notes are opinion work product because they "tend to reveal the attorney's mental processes" *United States v. Bertie Ambulance, Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *6 (E.D.N.C. June 25, 2015). As such, the notes are "afforded almost absolute protection." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381-82 (E.D. Pa. 2006).

Defendants argue that production of the SEC Notes is appropriate because the SEC attorneys should redact from their notes their mental impressions, conclusions, and opinions and produce the factual portions of the notes. (Def. Br. at 1). This argument was rejected in *SEC v. Downe*, 1994 WL 23131 (S.D.N.Y. Jan. 27, 1994), where the court concluded that

---

[2] James Smith and Victoria Prescott are the other two SEC attorneys who received a subpoena from the Defendants. Both of them have affirmed in their respective declarations, attached hereto as exhibits, that they do not have any documents that are responsive to the subpoena. *See* Exhibits 3 and 4 of appendix attached to this brief.

[3] *See* Exhibit 1 of appendix attached to this brief.

[4] *See* Exhibit 2 of appendix attached to this brief.

the defendant "mistakenly conflated 'facts' with 'factual portions of documents.'" *Id.* at *4. While "a party is not relieved of his obligation to divulge factual information merely because this information was learned by virtue of an attorney's efforts to prepare a case for litigation . . . . this does not mean that 'factual portions' of attorney work product are unprotected by the work product doctrine." *Id.* The court reasoned that "an attorney's notes regarding an interview, in particular, reflect 'what he saw fit to write down regarding witnesses' remarks' and thus are 'permeated with inferences.'" *Id* (quoting *Upjohn*, 449 U.S. at 399-400); *see also SEC v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (holding that even the revelation of purely factual assertions contained in interview notes "may reveal the questions asked and therefore the attorneys' mental impressions and conclusions."). Likewise, here, the "factual portions" of the SEC attorneys' notes cannot be easily divorced from their mental impressions. Thus, the SEC attorneys' notes are opinion work product that are protected from disclosure.[5]

## IV.    Defendants Have Failed to Show A Substantial Need for The SEC Notes

Even if the Court were to assume *arguendo* that the SEC Notes are fact, not opinion, work product, Defendants have still failed to show that they are unable to obtain the information in the notes elsewhere without undue hardship. A party seeking to compel the disclosure of interview notes must, at a minimum, show that the interviewees are not available for questioning. *FTC v. Hope Now Modifications LLC*, 2011 WL 2634029, at *5 (D.N.J. July 5, 2011) (refusing to compel disclosure of interview notes where defendants did not demonstrate their inability to obtain the witnesses' deposition testimony); *Downe*, 1994 WL 23141, at *3 ("denying discovery [of the attorney's notes] does not prevent [the defendant] from pursuing the factual information he seeks directly from the witnesses

---

[5] Defendants' reliance upon *SEC v. Cuban*, No. 3:08-CV-2050, 2013 WL 1091233 (N.D. Tex. Mar. 15, 2013), is unavailing. In that case, the court had previously determined that the information that the defendants sought – "evidence concerning the contents of Cuban's telephone conversation with [another witness] and of the conduct of Mamma.com" – was critical, and on that basis, concluded that the defendant had a substantial need for the notes in question. Here, by contrast, Defendants have failed to cogently explain why they have a substantial need for the SEC Notes, particularly where the witnesses who have first-hand knowledge of the relevant events are available to be deposed.

interviewed by the Commission"); *Bertie Ambulance Serv.*, 2015 WL 3932167, at 7 ("[I]f a witness is available to the other party, discovery [of work product] is generally not allowed."); *Baker*, 209 F.3d at 1054 ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.").

Here, Defendants have not shown a substantial need for the SEC Notes. As Defendants' counsel conceded at the hearing, Defendants have not deposed Robert Farrell, Robert Szostak, or any of the Ranger witnesses in this litigation. Hearing Tr. 44: 13-16. If Defendants want to discover what relevant information these witnesses provided to the SEC, the "defendants are free to question each of the witnesses at their depositions, and at trial, concerning the witnesses' statements to the SEC at earlier interviews." *SEC v. Stanard*, No. 06 CIV. 7736 (GEL), 2007 WL 1834709, at * 2 (S.D.N.Y. June 26, 2007). The availability of the witnesses to be deposed defeats Defendants' argument that they have a substantial need for the SEC attorneys' notes of the witness interviews.

Defendants argue that they have a substantial need for the SEC Notes because "when Farrell and Szostak were deposed in the parallel State court action, they either refused to answer questions about what they disclosed to the SEC in their interviews by the Staff, or did not recall what they discussed." (Def. Br. at 3). There are several problems with Defendants' argument.

First, regarding Szostak, although he did not recall all of the details of his various meetings with the SEC, he did fulsomely testify about his conversations with the SEC, including "the whole story of how Princeton Alternative Funding came about"[6] and the concerns he expressed to the SEC concerning PAF reporting a gain at the time of the Argon bankruptcy.[7] So, it is simply not true that Szostak had no recollection of his conversations with the SEC. But, more fundamentally, "[a]lthough Defendants argue that these witnesses failed to testify about the substance of their interviews [], it is the witnesses' recollection of the operative facts and circumstances of the case that is relevant, not their ability to recall the specifics of after-the-fact interviews." *SEC v. Nadel*, No. CV 11-215 WFK AKT, 2013

---

[6] *See* Exhibit 5 of appendix attached to this brief (Szostak Tr. 14:1-25; 15:1-6).
[7] *See* Exhibit 5 of appendix (Szostak Tr. 15:17-25; 16-17).

WL 1092144, at *3 (E.D.N.Y. 2013). "Defendants do not identify any relevant facts that the witnesses could not provide at their depositions. All of the examples provided pertain to the interview themselves, not the underlying facts of the case." *Id.* Significantly, in his state court deposition, Szostak was not asked about any of the relevant events that underpin ***this litigation*** – (1) Defendants' failure to disclose Phil Burgess, a tax felon, to PAF's investors, (2) Defendants' failure to track investments in real time, (3) Defendants' failure to select the best operators in the alternate lending sector, and (4) Defendants' failure to disclose that its largest investor, Ranger, sought a redemption of its investment. Accordingly, in his state court deposition testimony, Szostak did not demonstrate a faulty memory regarding the relevant issues that undergird this litigation because he was not asked about those issues. So, again, if Defendants seek to discover what relevant information Szostak provided to the SEC, there is nothing prohibiting them from obtaining that information by deposing him in this litigation.

Second, even if Defendants could establish a need to discover what Szostak told the SEC, they have failed to demonstrate that Szostak himself could not provide the information in a deposition. As noted above, Szostak provided fulsome testimony about his conversations with the SEC but could not recall details of specific conversations. As the SEC noted in the hearing, the SEC has produced over 560 emails between the SEC and so-called whistleblowers, including Szostak and Farrell. Hearing Tr. 24:11-12. If Defendants deposed Szostak they could use the documents the SEC already produced to try to refresh his recollection and attempt to obtain additional information about what Szostak told the SEC and when.

Likewise, with respect to Robert Farrell, Defendants suggest that taking his deposition in this litigation would be futile because in the state court matter, Farrell refused to answer questions about what he told the SEC in his interview with the Staff. Defendants' argument here misses the point. First, Defendants mischaracterize Farrell's state court deposition testimony. Although Farrell initially objected to questions about his conversations with the SEC on relevance grounds,[8] after the parties' obtained guidance from

---

[8] *See* Exhibit 6 of appendix (Farrell Tr. 26:1-20 (Vol. 1)).

the Court to resolve Farrell's objection,[9] Farrell fulsomely detailed his conversations with the SEC.[10]  But more fundamentally, in his state court deposition, Farrell was only asked about one of the four issues that undergird this litigation – Microbilt's ability to monitor investments.  And contrary to Defendants' counsel's statement at the hearing that such testimony would likely be exculpatory (Hearing Tr. 37:22-25), Farrell testified that he told the SEC that it was "[i]nconceivable" that Defendants were monitoring their investments in light of the fact that they were "blindsided" by the Argon bankruptcy.[11]  The larger point remains: if Defendants want to discover the relevant information that the SEC received from witnesses, the onus is on the Defendants to depose those witnesses in this litigation.  There is simply no reason to believe that doing so would be futile.  Because "Defendants [have] the opportunity to depose all of the witnesses in [this] case," they have not demonstrated a "substantial need" to obtain the SEC Attorneys' notes. *Nadel*, 2013 WL 1092144, at *3.[12]

## V.       Defendants' Attempt to Depose SEC Attorneys Is Improper and Should Be Quashed

As the SEC demonstrated in its August 16, 2024 letter (ECF No. 126), courts routinely quash attempts to depose SEC attorneys upon the ground that the testimony would impermissibly require the disclosure of opinion work product.  *See, e.g. SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("[T]he Court finds that the proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by the defendant to inquire into the mental processes and strategies of the SEC."); *SEC v. Ahmed*, 15 cv 675 (JBA), 2017 WL 1347668, at *3 (D. Conn. Apr. 7, 2017) ("[G]iven the risk of inadvertent disclosure of the SEC's counsel's mental impressions or futility of a deposition consumed by objections, the Court believes that the prudent course is to quash the deposition notice.").

---

[9] *See* Exhibit 6 of appendix (Farrell Tr. 99:6-10 (Vol. 1)).

[10] *See* Exhibit 7 of appendix (Farrell Tr. 121-123, 130:11-16, 252 (Vol. 2).

[11] *See* Exhibit 7 of appendix (Farrell Tr. 252:6-17 (Vol. 2)).

[12]  Defendants note that they served interrogatories and document requests in the state court action to one of the whistleblowers, John Barille, and that he objected to this discovery.  Defendants, however, have not deposed Mr. Barille in this litigation nor have they provided any evidence that Mr. Barille would be unavailable to testify.

Although Defendants claim that they have no intention of discovering the SEC's mental impressions and conclusions, they blatantly ignored the Court's request that they provide a "detailed proffer in writing as to what [they] are seeking from the SEC by way of deposition." Hearing Tr. 45: 8-10. The Court explained that such a detailed proffer is pertinent to the issue of whether the information they seek is solely obtainable from the SEC's attorneys or "whether you can get the information that you're trying to get through other means." Hearing Tr. 45: 17-21.

Defendants' failure to provide a detailed proffer of what information they seek to obtain from the SEC attorneys – as requested by the Court – on its own warrants quashing Defendants' deposition subpoena. *See Conrad v. Wachovia Grp. Long Term Disability Plan*, No. CIV 08-5416 RMB JS, 2010 WL 5055783, at *2-3 (D.N.J. 2010) (holding that plaintiff conceded merits of defendant' argument by failing to address issue in plaintiff's supplemental brief).

Even if Defendants had made a detailed proffer, the fact remains that the SEC attorneys are not percipient witnesses, rather, the individuals they interviewed have first-hand knowledge of the relevant events. "The keystone to determining the need to subpoena opposing counsel is whether the information sought . . . may be obtained from another source." *SEC v. Contrarian Press*, No.-16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020); *United States ex rel Salomon v. Wolff*, No. 2:17-CV-05456-ES-CLW, 2022 WL 989317, at *4 (D.N.J. Mar. 23, 2022) (quashing deposition of opposing counsel because defendant could readily obtain the information from sources other than plaintiff's attorney); *Orthobond Corp. v. Burel*, No. CV 22-217 (RK)(RLS), 2023 WL 3867245, at *6 (D.N.J. June 7, 2023) (quashing deposition of opposing counsel because defendants had alternate means of obtaining the information, *i.e*, a fact witness). Here, there is no question that Defendants have an alternate means of obtaining relevant information – deposing the fact witnesses who the SEC attorneys interviewed – which precludes them from deposing attorneys who have no first-hand knowledge of the relevant events. For that reason, Defendants' deposition subpoenas should be quashed.

## VI.      Conclusion

At its heart, the Defendants' attempt to force the production of the SEC Notes and take the deposition of SEC attorneys is misbegotten.  When pressed by this Court, the Defendants have failed to: (1) explain their substantial need for the SEC Notes; (2) explain why they cannot get the information elsewhere; and (3) provide the Court with the detailed proffer it requested in order to explain the information they seek from the SEC's attorneys. Defendants have met none of the required burdens here, and their attempts to force the production of the SEC Notes and take these depositions should be denied in full.

                    SECURITIES AND EXCHANGE COMMISSION


          By:      */s/ P. Davis Oliver*_____
                    P. Davis Oliver
                    Charlie Divine
                    Attorneys for Plaintiff