UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civ. No. 21-12971 (RK)(JBD) |
| Plaintiff, | MEMORANDUM ORDER |
| v. | |
| PRINCETON ALTERNATIVE FUNDING, LLC, *et al.*, | |
| Defendants. | |

In this civil enforcement action brought by the Securities and Exchange Commission against defendants Princeton Alternative Funding LLC, Microbilt Corporation, Philip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr., a discovery dispute has arisen regarding subpoenas directed to four SEC attorneys. [Dkt. 126.] Defendants move to compel the SEC attorneys to sit for depositions and to produce redacted versions of their notes summarizing witness interviews. Invoking the work-product doctrine and the deliberative-process privilege, the SEC objects and moves to quash the subpoenas. For the reasons that follow, defendants' motion to compel is denied and the SEC's motion to quash is granted.

## I. BACKGROUND

The Court and the parties are well versed in this case and an abbreviated summary will suffice. Following an investigation, the SEC brought this action in June 2021 alleging that defendants violated the anti-fraud provisions of the federal securities laws through material misrepresentations and omissions in the

solicitation of two investment funds. [Dkt. 1] at 1-2. The SEC's investigation was aided, in part, by information that two former employees of the funds, Robert Farrell and Robert Szostak, provided to the SEC as putative whistleblowers. Defendants believe that the investigation and the resulting complaint were tainted by false information that Farrell, Szostak, and the funds' largest investor provided to the SEC.

Fact discovery in this case has been pending since December 2021 and is presently scheduled to conclude in March 2025. In aid of their effort to show that the SEC received and relied on false information during the investigation, defendants served Rule 45 subpoenas demanding the deposition of four SEC attorneys who participated in the investigation and prosecution of this case. One of the attorneys is the SEC's lead trial counsel in the present litigation; the other three participated in the pre-suit investigation. The SEC objected to the subpoenas and the parties filed a joint letter presenting the dispute to the Court. [Dkt. 126.] Thereafter, defendants served amended subpoenas seeking not only the attorneys' depositions, but also copies of notes that they took during any witness interviews in the investigation. (The amended subpoenas combined the requests for depositions and documents, but for ease of reference the Court will refer to the "document subpoenas" and the "deposition subpoenas.") As to both the depositions and the documents, defendants say that they do not seek to invade the attorneys' core

2

opinion work product, but that they seek only "factual" and "objective" information. *See* [Dkt. 126] at 4; [Dkt. 137] at 2.[1]

The Court heard oral argument on the dispute on October 9, 2024 and received supplemental briefing thereafter. [Dkts. 134, 135, 136, 137, 138.]

## II.   LEGAL STANDARDS

Rule 45 authorizes a party to serve a subpoena commanding a person to attend a deposition and to produce documents. Fed. R. Civ. P. 45(a)-(c). The rule requires the Court to quash or modify the subpoena if, among other things, it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it would impose an "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Those directives are consistent with Rule 26's limitation that only nonprivileged information is discoverable and its more general grant of authority to the Court to limit or prohibit discovery where it would result in annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(b)(1), (c).

In this case, the SEC argues that the subpoenas seek discovery shielded by the work-product doctrine. [Dkt. 126] at 2-3, [Dkt. 138] at 3-6.[2] That doctrine

---

[1]   The document subpoenas request "all notes that you took during interviews in the investigation that le[]d to the filing of the Complaint in this matter, limited to the memorialization of statements made by the person interviewed, either verbatim or in substance and effect, but exclusive of mental thought processes, observations or comments that could constitute attorney work product." [Dkt. 137] at 9, 13, 15, 19.

[2]   Because the Court resolves this dispute under the work-product doctrine, it does not address the SEC's separate assertion of the deliberative-process privilege.

derives from the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now codified in the Federal Rules:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i)  they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3); *see also Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, Civ. No. 99-4565 (SSB), 2004 WL 7339771, at *8 (D.N.J. June 22, 2004). "The [work-product] doctrine seeks to enhance the quality of professionalism within the legal field by preventing attorneys from benefitting from the fruit of an adversary's labor." *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 147 (D.N.J. 1997). It "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and "thus promotes the adversarial system by protecting the confidential nature of materials prepared by attorneys in anticipation of litigation and enables attorneys to prepare cases without

4

fear that their work product will be used against their clients." *In re Grand Jury*, 138 F.3d 978, 981 (3d Cir. 1998) (cleaned up).

The party invoking the work-product doctrine bears the initial burden of demonstrating that it applies to the materials at issue. *See J.V. v. Macy's, Inc.*, Civ. No. 13-5957 (KSH), 2015 WL 12866971, at *1 (D.N.J. Aug. 19, 2015). Once the invoking party makes that showing, the burden shifts to the party seeking disclosure to demonstrate a substantial need for the materials and that the substantial equivalent cannot be obtained elsewhere without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii); *Kramer v. Raymond Corp.*, Civ. No. 90-5026 (LHP), 1992 WL 122856, at *2 (E.D. Pa. May 29, 1992). And Rule 26(b)(3)(B) imposes an even more restrictive rule for core opinion work product, because an attorney's "mental impressions and legal theories of the case" "lie[] at the very core of the most stringently protected work product." *Wartsila*, 2004 WL 7339771, at *8. Accordingly, "core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

### III. DISCUSSION

Defendants do not challenge these principles. Recognizing that deposing SEC attorneys and requiring disclosure of their interview notes could implicate the work-product doctrine, defendants emphasize that they seek purely "factual" information and not the attorneys' mental impressions, conclusions, opinions, or legal theories.

5

*See* [Dkt. 137] at 1-2. In that regard, defendants ask the Court to compel the SEC attorneys to disclose redacted versions of their notes in compliance with Rule 26(b)(3)(B). Defendants also argue that to the extent that the doctrine applies to such "factual" information, they have demonstrated a substantial need for the notes and cannot obtain without undue hardship the substantial equivalent of the factual information in the notes. *Id.* at 2-3. Likewise, as to the depositions, defendants represent in general fashion that they do not intend to question the SEC lawyers on their mental impressions, conclusions, opinions, or legal theories, but seek only objective information regarding the chronology of the investigation, "for example, who they met with, when, whether they took notes, what internal SEC protocols they followed, if any, what correspondence and documents they received, from whom and when." [Dkt. 26] at 4; [Dkt. 137] at 2. Defendants argue that these limitations resolve any work-product concerns.

The Court first addresses defendants' requests for the SEC attorneys' interview notes and then turns to their requests to depose the attorneys.

    A.    <u>Interview Notes</u>

        1.    <u>The Work Product Doctrine Applies to the Interview Notes, Which Reflect Core Opinion Work Product</u>.

The work-product doctrine applies to the SEC attorneys' interview notes. Courts "routinely f[i]nd that interview notes taken by the SEC during a fact-finding investigation to determine whether to proceed with charges fall within the work-

6

product doctrine." *SEC v. Collector's Coffee Inc.*, 337 F.R.D. 70, 76 (S.D.N.Y. 2020), *objections overruled*, Civ. No. 19-4355 (VM), 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021). *See also SEC v. NIR Group, LLC*, 283 F.R.D. 127, 133 (E.D.N.Y. 2012) (doctrine applied to notes derived from interviews conducted by "an SEC attorney, a staff accountant[,] and a legal intern as part of the [SEC]'s investigation into the defendants," because the interviews were conducted "in order to provide the Commission with information so that it could determine whether or not to proceed with litigation"); *SEC v. Strauss*, Civ. No. 09-4150 (RMB), 2009 WL 3459204, at *4 (S.D.N.Y. Oct. 28, 2009) (interview notes prepared by SEC attorneys during pre-suit investigation "easily fit within the protection of the work-product doctrine"); *SEC v. Stanard*, Civ. No. 06-7736 (GEL), 2007 WL 1834709, at *1-2 (S.D.N.Y. June 26, 2007) (notes prepared during witness interviews conducted while the SEC was considering "whether to initiate litigation" constituted work product); *SEC v. Cavanagh*, Civ. No. 98-1818 (DLC), 1998 WL 132842, at *2 (S.D.N.Y. Mar. 23, 1998) (concluding that doctrine applied to pre-suit witness interview notes).

Defendants do not argue that the work-product doctrine is categorically inapplicable here. The question, rather, is whether redacting the SEC attorneys' notes leaves only "factual" information that may be produced consistent with Rule 26(b)(3)(A). The answer, almost always, is no. An attorney's annotated summary of what a witness said inherently reflects—in various ways—the attorney's thoughts, impressions, strategies, and opinions. To name a few: the attorney must

7

exercise strategic judgment in deciding whom to interview in the first place; the resulting notes will reflect the attorney's strategic decisions and thought processes in deciding what questions to ask that prompt the witness's answers; the attorney must exercise "editorial discretion" in deciding what is important enough from the interview to memorialize in the notes, *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979); and what the attorney does choose to include in the notes is imbued with his or her own subjective understanding and impression of the witness's statements and responses.[3]

Given all this, a party cannot so easily displace an attorney's interview notes from Rule 26(b)(3)(B)'s scope by asking only for segregated "factual" information, because the attorney's mental processes and conclusions are suffused throughout. *See SEC v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006); *FTC v. Hope Now Modifications, LLC*, Civ. No. 09-1204 (JBS), 2011 WL 2634029, at *5 (D.N.J. July 5, 2011) (explaining that "even where the attorney's summary of a witness's oral statements appears to be entirely factual, the attorney's mental processes are necessarily disclosed to some degree") (citation omitted). As another court has explained:

---

[3]   Citing *Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.,* defendants argue that verbatim testimony is not opinion work product. [Dkt. 137] at 2 (citing 258 F.R.D. 149, 161 n.8 (S.D. Tex. 2009)).  The Court does not conclude otherwise; the interview notes here, however, are not verbatim testimony.  *See* [Dkts. 138-1, 138-2.]

8

> [A]n attorney's mental processes are revealed to a certain extent even when the attorney's memorandum is factual in nature, merely summarizing what the witness said in response to the attorney's questions.  The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover), how to frame specific questions and in what order, and how much time to devote to particular topics.  Further, the attorney exercises selective judgment in determining what is worthy of being written down (or remembered) during the interview.  As a result, when opposing counsel is given access to the attorney's notes or memoranda from a witness interview, the attorney's mental processes necessarily are revealed.

*SEC v. Sentinel Mgmt. Grp., Inc.*, Civ. No. 07-4684, 2010 WL 4977220, at *9 (N.D. Ill. Dec. 2, 2010).  This Court agrees.[4]

---

[4] *See also In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979) ("Memoranda summarizing oral interviews . . . may indirectly reveal the attorney's mental processes, his opinion work product . . . [and therefore] such documents will be discoverable only in a 'rare situation.'") (citation omitted); *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("At some point, however, a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."); *SEC v. Berry*, Civ. No. 07-4431 (RMW), 2011 WL 825742, at *8-9 (N.D. Cal. Mar. 7, 2011) (surveying cases and concluding that interview notes were opinion work product because they revealed the attorney's thought processes in selecting the subjects and questions of the interviews); *SEC v. Roberts,* 254 F.R.D. 371, 383 (N.D. Cal. 2008) (holding that even the revelation of purely factual assertions contained in interview notes "may reveal the questions asked and therefore the attorneys' mental impressions and conclusions"); *SEC v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) (internal citations omitted) ("Examples of opinion work product include notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions.  Investigatory reports that contain summaries of witness interviews are also opinion work product because the reports are suffused with the investigator's mental impressions and conclusions."); *SEC v. Downe*, Civ. No. 92-4092 (PKL), 1994 WL 23141, at *2 (S.D.N.Y. Jan. 27, 1994) ("[N]otes of an attorney concerning witness interviews are precisely the type of materials that the Supreme Court identified in *Upjohn* as deserving of special protection."); *SEC v. Treadway*, 229 F.R.D. 454, 455 (S.D.N.Y. 2005) (affirming

9

In this case, the two SEC attorneys who possess responsive interview notes[5] have attested in sworn declarations that their notes: (i) are not verbatim transcriptions of what interviewees said; (ii) contain mental impressions, conclusions, opinions, and reflect legal theories examined and reached during the investigation; (iii) include questions that that the attorneys posed, thereby reflecting their legal and investigative strategy in the selection of topics to cover, the order in which they were covered, and the framing of the questions; and (iv) include non-verbatim responses that the attorneys considered important enough to summarize. [Dkts. 138-1, 138-2.] Thus, the Court concludes that the work-product doctrine applies to the notes and that they reflect core opinion work product.

### 2. Defendants Have Not Demonstrated a Sufficient Need for the Interview Notes.

As a result, the Court agrees with the SEC that the attorneys' notes—even stripped to ostensibly "factual" recitations of what witnesses said—implicate Rule 26(b)(3)(B)'s more stringent protection of the attorneys' core mental impressions, conclusions, opinions, and legal theories. In that regard, the

---

magistrate judge's "determination that [interview] notes represent attorney work product that, at least in part, 'reflect[s] the thought processes of counsel'"); *SEC. v. Goldstone*, 301 F.R.D. 593, 661 (D.N.M. 2014) (concluding that SEC "interview notes and memoranda reflect[ed], at least to some extent, opinion work product as well as fact work product, because they record the witnesses' statements as filtered through an SEC employee").

[5] The other two attorneys represent in sworn declarations that they do not possess notes responsive to the subpoenas. [Dkts. 138-3, 138-4.]

"[n]otes and memoranda of an attorney . . . from a witness interview are opinion work product entitled to almost absolute immunity." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Defendants do not argue that this is the "rare and exceptional circumstance" in which disclosure of core opinion work product is appropriate. *Cendant*, 343 F.3d at 663. The Court therefore quashes the document subpoenas on that basis.

To any extent, however, that ostensibly "factual" information in the notes implicates only Rule 26(b)(3)(A)'s more limited protection, the Court also concludes that defendants have failed to demonstrate a "substantial need" for the notes. Defendants spend much time arguing that they cannot obtain the information that they seek through depositions of the whistleblowers because during depositions in related state-court litigation, the whistleblowers either objected to questioning on the issue or could not recall what they told the SEC during their interviews. [Dkt. 137] at 3-4. But that goes to defendants' separate (albeit related) burden to show that they cannot obtain the substantial equivalent of the information in the interview notes without undue hardship. Defendants fail in the first instance to explain why they *need to know what the whistleblowers told the SEC*—beyond simply stating that they do. *See id.*

It is not sufficient, in this Court's view, to "speculat[e]" that something "exculpatory" might be in the notes, [Dkt. 136] at 38:25-39:11, or to argue that the notes "likely" will reveal "relevant information that bears directly on the merits of

11

the SEC's case." [Dkt. 137] at 3. While defendants undoubtedly are interested to know what the whistleblowers told the SEC, absent a more substantial showing, what really matters is defendants' ability to learn what the witnesses' accounts *are*, so that they can test those accounts at trial. And as to that issue, defendants will have full ability during depositions in this case to probe Szostak, Farrell, and any other relevant witness on their versions of historical fact, and to challenge those accounts as false.[6] In doing so, defendants may, of course, question the witnesses during the depositions on the accounts that they provided to the SEC. Because defendants have not demonstrated why that is insufficient, the Court concludes that the balance tips in favor of preserving the SEC's work product.[7]

---

[6] Although defendants do not expressly state as much, one implicit purpose in their argument is that they wish to know what the witnesses said to the SEC to identify inconsistencies in their future deposition and trial testimony. If that is so, the Court notes that it is unlikely "that the desire to impeach or corroborate a witness's testimony, by itself, would ever overcome the [core opinion work-product] protection afforded" to the notes. *In re Grand Jury*, 599 F.2d at 1233.

[7] The Court does not agree with defendants that it should follow the approach taken in *SEC v. Cuban*, Civ. No. 08-2050 (SAF), 2013 WL 1091233 (N.D. Tex. Mar. 15, 2013). In that case, the court first denied Mark Cuban's request to obtain SEC attorneys' interview notes generated in connection with the investigation of him, concluding that he had not shown a substantial need or an inability to obtain the substantial equivalent of the information without undue hardship. *Id.* at *3-4. The court then turned to Cuban's request for interview notes generated in connection with an earlier, separate investigation in which he was mentioned. The court recognized that "notes of witness interviews are . . . generally opinion work product because they can reveal mental impressions, such as the importance placed on certain information." *Id.* at *5. Accordingly, the court made clear that in all events the SEC would not be required to disclose core opinion work product contained in the notes. *Id.* But the court then concluded that under the

12

Accordingly, to the extent that the SEC attorneys' factual work product in the notes is even conceivably segregable from their opinion work product, the Court concludes that defendants have not met their burden of demonstrating a substantial need for it. The Court therefore does not address defendants' argument that obtaining the substantial equivalent would present an undue hardship.

B.   Depositions

By its terms, Rule 26(b)(3) applies only to "documents and tangible things." But the work-product doctrine derives from the Supreme Court's decision in *Hickman* and so "is interpreted under both the rule and *Hickman*." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006). And the Supreme Court there "made clear that [the impermissible] disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions[.]" *SEC v. McGinnis*, Civ. No. 14-06 (CR), 2015 WL 13505396, at *4 (D. Vt. Jan. 13, 2015) (quoting *United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 428 n.10

---

circumstances of that case, Cuban had met his burden under Rule 26(b)(3)(A)(ii) and required the SEC to disclose factual work product in the notes, subject to its right not to disclose core opinion work product. *Id.* at *5-6. Aside from this Court's basic disagreement with that approach—recognizing that interview notes generally are imbued with mental impressions but nonetheless requiring disclosure of segregable fact work product contained therein—the Court finds the unusual facts in *Cuban* to be significantly different than those in this case. In short, Cuban's demonstration of a substantial need there is on a different plane than defendants' effort here.

13

(6th Cir. 1996)).  Applying well-established case law and given the same work-product concerns expressed above, the Court quashes the deposition subpoenas.

In the initial letter presenting the dispute to the Court, defendants stated in general fashion that they sought the depositions of the SEC attorneys to question them "about the chronology of their involvement in the investigation that le[]d to the filing of the Complaint—for example, who they met with, when, whether they took notes, what internal SEC protocols they followed, if any, what correspondence and documents they received, from whom and when." [Dkt. 126] at 4.  Doing so, they argued, would not impact the work-product doctrine.  *Id.*  At oral argument, the Court repeatedly pressed defendants for a more specific proffer of what information they sought to obtain from the depositions of the SEC attorneys.  [Dkt. 136] ("Tr.") at 35-39, 45.  Beyond "speculating" that they believed the depositions would reveal "exculpatory" information, defendants indicated that they seek to confirm through the depositions that, as a result of the witness interviews, the SEC attorneys "knew or should have known" that the information the whistleblowers provided was false.  *Id.* at 35:13-18; 36:7-25; 37-14:25; 38:6-13; 38:25-39:6.  Determining that it needed something more concrete, *id.* at 36:4-6, the Court directed supplemental briefing on the issue and ordered defendants in that briefing to "set[] forth in detail what information they seek, and for what purpose, through depositions of the four SEC attorneys who have received Rule 45 subpoenas." [Dkt. 135.]  Defendants did not

14

do so, however, and so the purpose and scope of their intended questioning remains unclear.

The Court does not question counsel's good faith and sincerity in stating that they intend to honor the work-product doctrine and its protection of core attorney opinions and mental processes.  But given their representation at oral argument that they want to show what the SEC attorneys knew or should have known through the witness interviews, and given the general nature of the inquiries at issue, the Court nonetheless finds it likely that despite counsel's best intentions, the depositions will veer into the SEC attorneys' core opinions and mental impressions.  In any event, for the reasons already set forth, even if defendants do only question the attorneys about "factual" information—*e.g.*, who was interviewed and when, what the attorneys asked the witnesses, and what the witnesses said—that "factual" questioning itself will tread unduly into protected territory.

A wealth of case law reinforces the Court's concerns.  In case after case, courts have refused to permit depositions of SEC attorneys and other agency counsel where those depositions would lead to questioning counsel about information—even "factual" information—obtained during pre-suit investigations.[8]

---

[8]  *See, e.g.*, *SEC v. Gandy*, Civ. No. 21-3672 (GCH), 2023 WL 211005, at *3 (S.D. Tex. Jan. 17, 2023); *SEC v. Contrarian Press*, Civ. No. 16-6964 (VSB), 2020 WL 7079484, at *3 (S.D.N.Y. Dec. 2, 2020); *SEC v. Ahmed*, Civ. No. 15-675 (JBA), 2017 WL 1347668, at *3 (D. Conn. Apr. 7, 2017); *SEC v. McGinnis*, Civ. No. 14-06 (CR), 2015 WL 13505396, at *7 (D. Vt. Jan. 13, 2015); *SEC v. Goldstone*, 301 F.R.D. 593, 664 (D.N.M. 2014); *SEC v. NIR Grp., LLC*, Civ. No. 11-4723 (JFB), 2013 WL

The cases start with the principle that a party ought to have a compelling reason for deposing the other side's attorneys (especially its trial counsel). A "deposition of a party's attorney is usually both burdensome and disruptive," and so "the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order unless the party seeking the deposition can show both the propriety and need for the deposition." *SEC v. SBM Inv. Certificates, Inc.*, Civ. No. 06-0866 (DKC), 2007 WL 609888, at *26 (D. Md. Feb. 23, 2007) (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987)); *see also SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("[B]arring the deposition of the SEC is a result that accords with the negative light in which depositions of

---

5288962, at *5 (E.D.N.Y. Mar. 24, 2013); *SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1176-78 (D. Colo. 2009); *SEC v. Monterosso*, Civ. No. 07-61693, 2009 WL 8708868, at *2 (S.D. Fla. June 2, 2009); *SEC v. Jasper*, Civ. No. 07-6122 (HRL), 2009 WL 1457755, at *2-4 (N.D. Cal. May 26, 2009); *SEC v. SBM Inv. Certificates, Inc.*, Civ. No. 06-0866, 2007 WL 609888, at *25-26 (D. Md. Feb. 23, 2007); *SEC v. Buntrock*, 217 F.R.D. 441, 444-46 (N.D. Ill. 2003); *SEC v. Cavanagh*, Civ. No. 98-1818 (DLC), 1998 WL 132842, at *2-4 (S.D.N.Y. Mar. 23, 1998); *SEC v. Rosenfeld*, Civ. No. 97-1467 (RPP), 1997 WL 576021, at *3-4 (S.D.N.Y. Sept. 16, 1997); *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992); *SEC v. World-Wide Coin Invs., Ltd.*, 92 F.R.D. 65, 67 (N.D. Ga. 1981); *EEOC v. McCormick & Schmick's Seafood Restaurants, Inc.*, Civ. No. 08-984 (WMN), 2010 WL 2572809, at *5 (D. Md. June 22, 2010). The Court notes that most of this case law arose in the context of Rule 30(b)(6) deposition notices that would have required testimony or assistance from agency attorneys, rather than the Rule 45 subpoenas that defendants served directly on individual SEC attorneys in this case. The distinction is largely immaterial to this Court's analysis. If anything, however, because the SEC is not categorically immune from a Rule 30(b)(6) deposition, the individual Rule 45 subpoenas served on SEC counsel here provides even more cause for concern about intrusion on protected attorney work product.

16

opposing counsel are held"); *accord Orthobound Corp. v. Burel*, Civ. No. 22-217 (RK), 2023 WL 3867245, at *6-7 (D.N.J. June 7, 2023).

The resulting throughline in these cases is the concern that deposing agency counsel about their investigative activities will intrude on core protected opinions and mental impressions. The SEC attorneys are not percipient witnesses with independent knowledge of the alleged wrongdoing at issue. Rather, their knowledge comes from their investigation, including their interviews with witnesses who do have such knowledge. As with the interview notes, deposing SEC counsel on "the import of these [interviews] would involve questions of attorney work product since they would reflect [counsel's] areas of interrogation, mental impressions, and opinions concerning credibility." *SEC v. Rosenfeld*, Civ. No. 97-1467 (RPP), 1997 WL 576021, at *3 (S.D.N.Y. Sept. 16, 1997); *see also Morelli*, 143 F.R.D. at 47 (entering protective order because deposition notice amounted to an attempt "to ascertain how the SEC intends to marshal[] the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated"); *SEC v. Buntrock*, 217 F.R.D. 441, 446 (N.D. Ill. 2003) (prohibiting deposition of SEC counsel because the defendant "clearly seeks not the facts, but the manner in which the SEC intends to marshal them"); *EEOC v. McCormick & Schmick's*, Civ. No. 08-984 (WMN), 2010 WL 2572809, at *3 (D. Md. June 22, 2010) (precluding deposition of EEOC attorneys where those attorneys "had no independent knowledge of the events at issue and could only speak to

17

matters known through attorney involvement in anticipation of litigation, which would inevitably invade opinion work product").

As with the interview notes, no matter how much defendants insist that they intend to question the SEC attorneys about purely "factual" issues, that questioning inevitably will intrude on the attorneys' mental processes, impressions, and opinions about that "factual" information. That concern, again, is elevated in this case, because defendants explain that they want to demonstrate that "the [SEC] staff knew or should have known at some point that the information that they were being fed by the whistleblowers . . . was not true." Tr. at 36:7-25. Demonstrating what the attorneys knew or should have known—and when they knew or should have known it—inevitably will require questioning what counsel knew during the investigation, when, and how.

A similar situation arose in *SEC v. Jasper*, in which a defendant sought to depose the SEC and in doing so emphasized—as defendants do here—that he sought only the "factual content of [a witness's] statements" to the SEC. Civ. No. 07-6122 (HRL), 2009 WL 1457755, at *3 (N.D. Cal. May 26, 2009). The court prohibited the deposition, and its explanation applies equally to this case:

> [T]his court is unpersuaded by Jasper's assertions that he seeks only the factual contents of [the witness's] statements. Instead, it appears that what defendant really seeks is a probing examination as to [the witness's] (reconstructed) statements through the recollections of the SEC counsel who are prosecuting this matter—recollections which this court finds are not easily segregated from those attorneys' thoughts, mental impressions, opinions or conclusions about this case. Indeed,

18

> Jasper's own papers indicate that he wants to obtain discovery as to "[t]he SEC's state of knowledge at the time it filed the Maxim and Jasper complaints—including what it learned from [the witness]."

*Id.*; *see also SEC v. Gandy*, Civ. No. 21-3672 (GCH), 2023 WL 211005, at *3 (S.D. Tex. Jan. 17, 2023) (prohibiting deposition of SEC counsel because it would "inevitably involve inquiry into information protected by privilege and as work product"); *McCormick & Schmick's*, 2010 WL 2572809, at *5-6 (prohibiting deposition of EEOC counsel notwithstanding defendants' "repeated[] insist[ence] that they are only seeking factual information, not attorney work product," because "an invasion of attorney work product would be inevitable").

Finally, the Court also agrees with the SEC that there are superior ways than deposing SEC counsel to obtain the purely "factual" information that defendants want. For one, defendants may depose—in this case—the whistleblowers and any other witnesses that the SEC interviewed. *See SEC v. Contrarian Press*, Civ. No. 16-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020). By doing so, defendants will have full ability to test the veracity of the whistleblowers' allegations of wrongdoing, without risking intrusion on the SEC attorneys' internal thought processes. For another, defendants may serve appropriate interrogatories on the SEC seeking only historical information about the interviews and interviewees. *See, e.g.*, *SEC v. Monteroso*, Civ. No. 07-61693, 2009 WL 8708868, at *2 (S.D. Fla. June 2, 2009) (prohibiting deposition of SEC counsel but allowing for the possibility

that defendant may pursue his "questions by interrogatory, and the SEC may raise any claims of privilege thereto question-by-question").[9]

For these reasons, the Court will quash the deposition subpoenas directed to the SEC attorneys because they seek information protected by the work-product doctrine and because the depositions will impose an undue and unnecessary burden.

## IV. CONCLUSION

For the reasons stated, the subpoenas are quashed, and defendants' motion to compel the SEC attorneys' compliance with them is denied. The Clerk is directed to terminate the motion pending at [Dkt. 126].

IT IS SO ORDERED this 8th day of January, 2025.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

[9] At oral argument, the Court raised the possibility of defendants serving interrogatories of this kind on the SEC. Defendants say that they already served interrogatories on the SEC, but the portion of the SEC's response that defendants take issue with relates to defendants' request for the production of the interview notes here at issue. *See* [Dkt. 137] at 3, 31. Defendants may, if they wish, and to the extent they believe they did not receive the information that they seek through the SEC's responses to their first set of interrogatories, *see id.* at 28-38, serve additional interrogatories seeking identification of the witnesses the SEC interviewed, the dates of the interviews, and other purely factual information. In raising this option, the Court does not pre-judge any objections that the SEC may lodge to any such interrogatories.