

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF ENFORCEMENT

June 6, 2025

VIA CM/ECF FILING

The Honorable J. Brendan Day, U.S.M.J.
Clarkson S. Fisher Building & Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:  *SEC v. Princeton Alternative Funding, LLC, et al.*, Case No. 21-12971 (RK-JBD); Discovery Update and Dispute Regarding Plaintiff's Interrogatories to Defendants

Dear Judge Day:

Plaintiff Securities and Exchange Commission ("SEC") and Defendants Princeton Alternative Funding, LLC, MicroBilt Corporation, Phillip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr., (collectively "Defendants") submit this joint letter updating the Court regarding the status of discovery as required by the Court's April 10, 2025, Order. The Plaintiff and Defendants (collectively "Parties") also seek the Court's assistance in resolving a discovery dispute.

**I.    Status of Fact Discovery**

   **A.    Status of Discovery Propounded by the SEC**

Previously, the SEC requested, and Defendants agreed to produce, documents and discovery from a related state court matter, *Farrell v. MicroBilt Financial Services Corp., et al.,* No. MER-C-6-16 (consolidated with No. MER-L-675-20). The Parties' last update to the Court stated that the Defendants anticipated delivering to the SEC documents produced in the state court action no later than March 31, 2025. Defendants produced the requested documents to the SEC on May 13, 2025. The Defendants have also agreed to produce the written discovery from the state court case by June 16, 2025.

On February 25, 2025, the SEC noticed the depositions of Defendants Walter Wojciechowski, Philip Burgess, Jr., and John Cook, Jr., (the "Individual Defendants") and Alonzo Primus. The SEC re-noticed those depositions on April 10 and in addition on April 24 noticed the depositions of entity defendants PAF and MicroBilt pursuant to Federal Rule of Civil Procedure 30(b)(6). The SEC also noticed the deposition of Howard Davner on April 28. Defendants initially indicated that they objected to the depositions of the Defendants and Mr. Davner, but after a series of meet and confers, they agreed on June 5, 2025, to produce the Defendants and Mr. Davner at mutually agreeable times. The Parties

Letter to the Honorable Judge Brendan Day
Page 2 of 6

are discussing the scheduling of those depositions, which will be temporarily delayed due to scheduling conflicts. Subject to the Court granting the below requested extension, the Parties have agreed that by June 20 they will schedule dates for each of the depositions noticed by the SEC.

On February 21, 2025, the SEC served its Third Set of Interrogatories to Defendants and on May 5, 2025, the SEC served its Fourth Set of Interrogatories (collectively "Interrogatories") to Defendants. On May 22, 2025, Defendants responded to both sets of Interrogatories. For the reasons discussed below, the SEC contends the Defendants' responses to the Interrogatories are insufficient. In addition, on May 15, 2025, the SEC served each of the Defendants with Requests for Admissions and are awaiting Defendants' responses.

### B. Status of Discovery Propounded by the Defendants

The Defendants have served Rule 45 deposition subpoenas on Robert Farrell, Robert "Bert" Szostak, Darren Baldo, Esq., Edward Bernstein, Esq., and Bruce Clark, Esq. Those depositions have not yet been scheduled pending the resolution of the issue of the assertion of the attorney-client privilege by Messrs. Farrell and Szostak to the testimony sought from the attorney witnesses. Defendants have also subpoenaed the deposition of Larry West, Esq., but his attorneys have refused to accept service on West's behalf, necessitating personal service on West, which has not yet been effectuated.

### C. The Parties' Joint Request for an Extension of the Discovery Deadline

The current discovery deadline in this case is June 26, 2025. The Parties request the Court extend the discovery deadline to August 29, 2025. The Parties anticipate that they can schedule and complete the outstanding written discovery and remaining depositions in that time period.

## II. Discovery Dispute

As required by Local Rule 37.1(a)(1), the Parties submit the following statements regarding a discovery dispute related to the sufficiency of Defendants' responses to the SEC's Interrogatories. The Parties met and conferred on May 29, 2025.

**PLAINTIFF'S STATEMENT**

Defendants' responses to Plaintiff's Interrogatories are insufficient because Defendants fail to provide any meaningful response. Interrogatories Numbers 1 through 3 of Plaintiff's Third Set of Interrogatories ask Defendants to identify by Bates number and date the operative versions of the Private Placement Memoranda ("PPMs"), Investor Presentations, and Tear Sheets, Defendants used to market the Fund that is the subject of

this litigation. *See* Ex. A. Interrogatory 4 asks Defendants to identify each instance that they communicated to an investor or potential investor ("Investor") about Mr. Burgess's role in either PAF or MicroBilt. *Id.* Plaintiff's Fourth Set of Interrogatories consist of a single interrogatory that asks Defendants to identify each instance in which MicroBilt communicated to PAF historical rankings of the best operators in the alternative lending sectors. *See* Ex. B. Plaintiff's Interrogatories directly relate to the allegations in the Complaint, including Defendants' alleged misrepresentations to investors about Burgess's role in the Fund and the Fund's use of rankings from MicroBilt. *See* Complaint, ECF No. 1, ¶¶ 37-52, 69-81.

In response to each Interrogatory, Defendants object that the Interrogatory is unnecessarily duplicative, in some cases citing to specific responses to Requests for Admission ("RFAs") and in others referencing unspecified testimony from the SEC's investigation. However, the cited responses to the RFAs do not provide the information sought by the Interrogatories. For example, in response to Interrogatories Numbers 1 through 3 of Plaintiff's Third Set of Interrogatories, which ask about the operative versions of documents, Plaintiffs responded by citing to Burgess's response to RFA Number 11:

> Request for Admission No. 11
>
> Admit that between January 4, 2016 and March 2016, You and Wojciechowski distributed, or instructed PAF employees to distribute, the PPM and Marketing Materials to potential investors.
>
> Response to Request for Admission No. 11
>
> Denied that [Burgess] instructed any PAF employees to distribute any such materials to potential investors during the referenced time frame.

*See* Ex. C. Defendant Burgess's response does not provide any information about which versions of the PPMs, Investor Presentation, and Tear Sheets were made available to Investors. *Id.* Defendant Burgess's response to RFA No. 11, is one example of many RFA responses cited by Defendants that reference PPMs and marketing materials, but do not provide the information sought in the Interrogatories. Defendants' Interrogatory responses that refer to unspecified investigative testimony is equally unresponsive because the Defendants were not asked and did not offer the information requested in the Interrogatories.

Defendants also responded to each Interrogatory stating that relevant documents have already been produced, and that Plaintiff can obtain the requested information "in a manner that is more convenient, less burdensome and less expensive to Defendants." *See* Ex. C, Defendants' Answers to Plaintiff's Third Set of Interrogatories; Ex. D, Defendants'

Answers to Plaintiff's Fourth Set of Interrogatories. Federal Rule of Civil Procedure Rule 33(d) allows a party to produce business records in response to an interrogatory only if the answer to the interrogatory can "be determined by examining . . . a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party. . . ." However, first the responding party must, "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d).

In this case, Defendants have not provided any specificity about which documents the SEC should review, instead referring to all of the records previously produced by the Defendants. *See* Exs. C and D. Such broad responses are insufficient. "The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." *In re G-I Holdings Inc.*, 218 F.R.D. 428, 438 (D.N.J. 2003). The Defendants have not done what other courts have ordered answering parties to do, i.e., specify the Bates ranges of documents from which the answers to the Interrogatories can be ascertained. *See In re Field Turf,* No. CV 17-2779 (MAS), 2020 WL 14018934, at *3 (D.N.J. Nov. 6, 2020) ("to the extent Plaintiffs intend to rely on their relevant document production pursuant to Rule 33(d) to provide responsive information . . . Plaintiffs must identify the relevant documents by Bates Numbers").

Plaintiff's Interrogatories are narrowly drafted to obtain information that will streamline both the summary judgment briefing, and if necessary, trial of this case. Only Defendants, particularly the Corporate Defendants, are in a position to identify the versions of the PPMs, Investor Presentations, and Tear Sheets used by Defendants to market the Fund. To be clear, Plaintiff is not asking Defendants to identify every PPM, Presentation, and Tear Sheet shared with every Investor. Plaintiff is simply asking Defendants to identify one example of each version of each document used during the relevant period.

Unfortunately, Plaintiff cannot identify these documents without the Defendants' assistance because, although many of the documents are dated, only Defendants can identify which versions are final and over what period of time each version was used with potential investors. Presumably the Defendants kept records of the documents they used to market the Fund to investors, and know how those documents were produced to the SEC. In the alternative, only Defendants would know if no such records were kept.

As for Interrogatory 4, which asks about what Defendants told Investors about Defendant Burgess's role with PAF and MicroBilt, only Defendants know what they told Investors. If Defendants' answer, which is implied in their response to Interrogatory Number 4, is that Mr. Burgess had no role with the Fund and thus Defendants never discussed Burgess's role with Investors, they should say so. *See* Ex. C, Response to Third Set of Interrogatories, Number 4 ("although [Burgess] had no role in the Fund"). Regardless, Defendants should answer Interrogatory 4 by identifying each relevant communication with an Investor as requested by the Interrogatory. For the reasons discussed

above, Defendants' reliance on the documents they produced and investigative testimony is insufficient under Rule 33(d). *See In re G-I Holdings Inc.*, 218 F.R.D. at 438; *In re Field Turf,* 2020 WL 14018934, at *3.

For similar reasons, Defendants' response to Interrogatory 1 of the Fourth Set of Interrogatories is insufficient. Only Defendants, particularly the Corporate Defendants, know what if any historical rankings that MicroBilt shared with PAF. Defendants' reference to their previous document productions and investigative testimony does not satisfy the standard set forth in Rule 33(d). *Id.*

Plaintiffs respectfully request that the Court order Defendants to fully answer the Interrogatories as written.

**<u>DEFENDANT'S STATEMENT</u>**

Before and after the filing of the Complaint in this matter, Defendants have tried to demonstrate to SEC that the investigation of this matter started with the filing of false complaints to the SEC by three fake "whistleblowers." The ensuing investigation was fatally flawed as a result of that and other problems for all of the reasons that we have repeatedly cited to the SEC. The SEC's whistleblower program does not work properly unless the Staff self-polices abuses of the system, which it has not done in this case.

Among other things, over the course of the investigation that led to the filing of the Complaint in this matter, the SEC served a total of 28 subpoenas on the Defendants and others as a result, in large part, of the false information provided by the whistleblowers. The Defendants and their related entities responded to that extraordinary number of investigative subpoenas by producing more than 30,000 documents. At no time during its investigation did the SEC contend that the Defendants' compliance with those subpoenas, or their production of documents responsive to those subpoenas, was deficient. In addition, Defendants have now produced to the SEC more than 500,000 documents that were produced in discovery in the parallel State court case

Among the documents produced were copies of Private Placement Memoranda and marketing materials that Defendants believe were sent to potential investors by PAF/PAIF. Defendants' knowledge is limited by the fact that, from the inception of the Fund in 2014 until January 2016, the Fund was managed by Robert Farrell and Bert Szostak, two of the three fake whistleblowers (John Barrile, who, along with Farrell and Szostak, is a Third Party Defendant in the State court case, was the third fake SEC whistleblower.) Among their many management problems, Szostak and Farrell were lax in record keeping and document control and they frequently "over wrote" existing versions of PPM and marketing materials without saving and keeping track of prior versions of those materials. Thus, Defendants have produced those PPMs and marketing materials that were generated after Messrs. Davner and Cook took over management of the Fund, as well as prior versions of documents that Defendants were able to retrieve from the PAF/PAIF files.

      Nevertheless, Plaintiff is in as good a position as the Defendants to be able to identify and locate PPMs and marketing materials within the documents that the Defendants have already produced.  Plaintiff admits as much when it states that "many of the documents are dated," indicating that they have already identified the relevant documents.  Instead, they insist that the Defendants should be required to state "which versions are final and over what period of time each version was used with potential investors."  To the extent that that information is recoverable at all, it is self-evident from the documents themselves and, in the words of Defendants' objections, "can be obtained by Plaintiff from those documents and the transcripts of [investigative] depositions in a manner that is more convenient, less burdensome and less expensive to Defendants, see Rule 26(b)(2)(C)(i)."

      Moreover, in their responses to Interrogatories 1, 2 and 3 in Plaintiff's Third Set of Interrogatories, Defendants identified specific prior responses to Requests for Admissions *by number* that they/Defendants have already provided to Plaintiff to identify PPMs, Investor Presentations and Tear Sheets.  Again, to press Defendants for more information about those requests again now imposes an undue and unnecessary burden on Defendants.

      Defendants will continue to work with Plaintiff to resolve specific requests for documents and information, but Plaintiff's current demand that Defendants assume the burden of identifying documents that Plaintiff already has is unduly and unfairly expensive and burdensome under Rule 26(b)(2)(C)(i).

SECURITIES AND EXCHANGE COMMISSION

By:   /s/ Charlie L. Divine
       Charlie L. Divine
       P. Davis Oliver
       James E. Smith
       Attorneys for Plaintiff
       SECURITIES AND EXCHANGE COMMISSION

KROVATIN NAU LLC

By:   /s/Gerald Krovatin
       Gerald Krovatin
       Attorneys for Defendants

AGNIFILO INTRATER LLP

By:   /s/Zach Intrater
       Zach Intrater